Filed 4/16/24 Certified for Publication 5/10/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JONIE A. HOLLAND et al., | B323237 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 22STCV01945) |
| v. | |
| SILVERSCREEN HEALTHCARE, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Reversed and remanded with directions.

Lewis Brisbois Bisgaard & Smith, Tracy D. Forbath, Kathleen M. Walker and Raymond K. Wilson, Jr., for Defendant and Appellant.

Peck Law Group, Steven C. Peck and Adam J. Peck for Plaintiffs and Respondents.

_____

Following the death of their son, Skyler A. Womack (Skyler),[1] at Silverscreen Healthcare, Inc., doing business as Asistencia Villa Rehabilitation and Care Center (Asistencia), a skilled nursing facility, Jonie A. Holland (Holland) and Wayne D. Womack (Wayne)[2] brought this action against Asistencia, alleging survivor claims for dependent adult abuse and negligence on behalf of Skyler as well as their own claim for wrongful death. Asistencia moved to compel arbitration of the entire complaint pursuant to an arbitration agreement between Skyler and Asistencia. The trial court granted Asistencia's motion as to the survivor claims. However, relying heavily upon *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835 (*Avila*), it denied the motion as to the wrongful death cause of action on the ground that the parents did not have an enforceable arbitration agreement with Asistencia.

Asistencia appeals, arguing that pursuant to *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*), the parents are bound by

_____

[1]     Because they share the same last name, for clarity, we refer to Skyler and his father, Wayne, by their first names. No disrespect is intended.

[2]     We hereinafter refer to Holland and Wayne, in their individual capacities, as the parents. We refer to the parents and Holland in her capacity as Skyler's successor in interest, collectively as plaintiffs.

the arbitration agreement signed by Skyler; therefore, the parents' wrongful death claim is subject to arbitration.

We agree with Asistencia that *Ruiz* governs this matter. Accordingly, under *Ruiz* and Code of Civil Procedure section 1295,[3] the parents' wrongful death claim must go to arbitration along with Skyler's survivor claims.

## BACKGROUND

### I.  *Arbitration Agreement*

Skyler was a resident of Asistencia, a licensed 24-hour skilled nursing facility.  On January 5, 2020, he signed a document titled, "Resident-Facility Arbitration Agreement" (arbitration agreement).  (Bolding and capitalization omitted.)

The arbitration agreement provides, in relevant part, "that any dispute as to medical malpractice" and "any dispute . . . that relates to the provision of care, treatment and services the Facility provides to the Resident . . . , including any action for injury or death arising from negligence, intentional tort and/or statutory causes of action (including all California Welfare and Institutions Code sections), will be determined by submission to binding arbitration . . . ."

The arbitration agreement states that it "is binding on all parties, including the Resident's representatives, executors, family members, and heirs."  It "exclude[s]" section 1281.2, subdivision (c),[4] and further provides that "[t]he parties do not

---

[3]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4]     "Section 1281.2[, subd.] (c) grants a trial court discretion [to refuse] to enforce written arbitration agreements when (1) a party to the agreement also is a party to pending litigation with a

3

want any claims not subject to arbitration to impede any and all other claims from being ordered to binding arbitration."

II. *The Complaint*

Following Skyler's death October 29, 2020, his parents filed this action. The complaint asserts four causes of action against Asistencia: (1) dependent adult abuse; (2) negligence; (3) violation of residents' rights; and (4) wrongful death. The first three causes of action are Skyler's survivor claims (Skyler's claims) brought by his mother, Holland, in her capacity as Skyler's successor in interest. The fourth cause of action for wrongful death is brought by Holland and Wayne as individuals.

The complaint alleges that "[w]hile under the care and treatment" of Asistencia, Skyler "suffered from multiple falls with injury, and infections which caused him pain and suffering and were substantial factors in his untimely demise." Despite knowledge of problems such as understaffing, Asistencia's "officers, directors, and/or managing agents meaningfully disregarded the issues even though they knew the understaffing could, would, and did lead to unnecessary injuries to the residents and patients of their skilled nursing facilities, including [Skyler]." Asistencia "'neglected' [Skyler] as that term is defined in Welfare and Institutions Code [section] 15610.57 in that Asistencia . . . failed to exercise the degree of care that reasonable persons in a like position would exercise by denying or

---

third party who did not agree to arbitration; (2) the pending third-party litigation arises out of the same transaction or series of related transactions as the claims subject to arbitration; and (3) the possibility of conflicting rulings on common factual or legal issues exists." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 964.)

4

withholding goods or services necessary to meet the basic needs of [Skyler] . . . ." (Italics and capitalization omitted.)

Specific to the wrongful death cause of action, the complaint alleges that Asistencia owed Skyler statutory and common law duties and failed to meet its duties. "As a proximate result of [Asistencia's] negligence and 'neglect,'" the parents "sustained the loss of the society, comfort, attention, and love of" Skyler "as a proximate result of the negligent acts (both negligence and neglect as that term is defined in Welfare [and] Institutions Code [section] 15610.57) . . . ." (Italics omitted.)

III. *Asistencia's Petition to Compel Arbitration*

Asistencia filed a petition to compel arbitration of each of the four causes of action asserted in the complaint. Plaintiffs opposed the petition. They argued, inter alia, that (1) the arbitration agreement did not apply to the wrongful death cause of action because the parents did not sign it, and (2) the trial court should exercise its discretion under section 1281.2, subdivision (c), not to compel arbitration.

IV. *Trial Court's Order*

The trial court found that Asistencia had demonstrated the existence of an arbitration agreement that covered and compelled arbitration of Skyler's claims—that is, the first three causes of action for dependent adult abuse, negligence, and violation of residents' rights.

However, relying on *Avila, supra*, 20 Cal.App.5th 835, the trial court concluded that the parents' wrongful death cause of action was not subject to arbitration because it was "based upon neglect within the meaning of the Elder Abuse and Dependent Adult Civil Protection Act" (Elder Abuse Act) (Welf. & Inst. Code, § 15600 et seq.) rather than medical malpractice. Accordingly,

5

section 1295 and the holding in *Ruiz, supra,* 50 Cal.4th 838 did not apply.[5]

Declining to exercise its discretion under section 1281.2, subdivision (c), to refuse to enforce the arbitration agreement, the trial court granted Asistencia's petition to compel as to Skyler's claims but denied it as to the parents' wrongful death cause of action.

V. *Appeal*

Asistencia's timely appeal ensued.

## DISCUSSION

The sole issue in this appeal is whether the trial court erred in denying Asistencia's petition to compel arbitration as to the parents' wrongful death cause of action.[6]

---

[5] Section 1295 "create[s] certain requirements for arbitration agreements of 'any dispute as to professional negligence of a health care provider.' (§ 1295, subd. (a).)" (*Avila, supra,* 20 Cal.App.5th at p. 841.) In *Ruiz, supra,* 50 Cal.4th at page 849, "the California Supreme Court held that section 1295 permitted patients who consented to arbitration to bind their heirs in actions for wrongful death. [Citation.]" (*Avila, supra,* at pp. 841–842.)

[6] In their respondents' brief, plaintiffs urge us to reverse the portion of the trial court's order compelling arbitration of Skyler's claims. Because plaintiffs failed to file a cross-appeal from the order, they have forfeited their challenge. (See *Gutierrez v. Chopard USA Ltd.* (2022) 82 Cal.App.5th 383, 394 [the plaintiff's failure to file a cross-appeal from the trial court's order forfeited her challenge to the order seeking affirmative relief]; *Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 187 ["A respondent must file a notice of appeal and become a cross-appellant if the respondent seeks affirmative relief by way of appeal"].) Forfeiture aside, our

6

I.  *Standard of Review*

Where, as here, no evidentiary conflict exists, we review de novo an order denying a motion to compel arbitration.  (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126.)

II.  *Relevant Law*

A.  <u>General arbitration law</u>

Generally, "a party cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration. [Citations.]" (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*).)  As relevant here, an exception to this rule was carved out by the California Supreme Court in *Ruiz, supra*, 50 Cal.4th 838.

*Ruiz* addressed the following issue:  "[W]hen a person seeking medical care contracts with a health care provider to resolve all medical malpractice claims through arbitration, does that agreement apply to the resolution of wrongful death claims, when the claimants are not themselves signatory to the arbitration agreement?" (*Ruiz, supra,* 50 Cal.4th at p. 841.)

In answering this question, *Ruiz* focused on the legislative intent behind section 1295.  Enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA), section 1295 "contemplates that all medical malpractice claims, including wrongful death claims, may be subject to arbitration agreements between a health care provider and the patient." (*Ruiz, supra,* 50 Cal.4th at p. 841; see also *id.* at p. 843.)  Section 1295 encourages and facilitates arbitration of medical malpractice disputes, which "furthers MICRA's goal of reducing costs in the

---

conclusion that the parents' wrongful death cause of action must be sent to arbitration renders plaintiffs' argument moot.

resolution of malpractice claims and therefore malpractice insurance premiums." (*Ruiz, supra*, at p. 844.)

*Ruiz* concluded "that section 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions." (*Ruiz, supra,* 50 Cal.4th at p. 849.) Accordingly, *Ruiz* held "that all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295, at least when . . . the language of the agreement manifests an intent to bind these claimants." (*Ruiz, supra*, at p. 841.)

      B.  <u>The wrongful death tort and the Elder Abuse Act</u>

At common law, personal torts expired when the victim died. Today, a cause of action for wrongful death exists by statute, giving a decedent's heirs a totally new right of action, on different principles. (§§ 377.60–377.62; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263 (*Quiroz*).) The elements of a wrongful death cause of action are "'the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by the *heirs*.'" (*Quiroz, supra,* at p. 1263.)

"Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event." (*Quiroz, supra*, 140 Cal.App.4th at p. 1264.) The heirs can recover damages for "the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the

8

decedent lived, and [not including] damages for pain, suffering, or disfigurement." (§ 377.34, subd. (a).)

One exception to the rule that damages for the decedent's predeath pain and suffering are not recoverable in a survivor action is contained in the Elder Abuse Act. "The ability of the decedent's successor in interest to recover damages for the decedent's predeath pain, suffering, or disfigurement under [Welfare and Institutions Code section 15657] specifically trumps the general prohibition on such recovery provided at Code of Civil Procedure section 377.34. [Citation.]" (*Quiroz*, *supra*, 140 Cal.App.4th at p. 1265.) But the law is clear that the cause of action for a violation of the Elder Abuse Act belongs to the elder victim; the claim does not pass on to survivors. (*Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1209 ["the cause of action for elder financial abuse belongs to [the elder] as the real party in interest"]; *Quiroz*, *supra*, at p. 1283 ["The legislative history does not reveal any intent to apply the [Elder Abuse] Act to a wrongful death action brought by a decedent's heir on his or her own behalf"].)

III. *Analysis*

Applying these legal principles, we conclude that the parents' wrongful death claim falls squarely within the scope of *Ruiz* and must be ordered to arbitration. The arbitration agreement's plain language manifests an intent between the parties to bind Skyler's heirs, i.e., the wrongful death claimants, to any claims of professional negligence. (*Ruiz*, *supra*, 50 Cal.4th at pp. 849, 851.) After all, it complies to the letter with section 1295, subdivisions (a) and (b).

And the parents' bare bones claim against Asistencia sounds in professional negligence. (See § 1295, subd. (g)(2)

9

["'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death . . ."]; *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 353 ["'when a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the "professional negligence" of the health care provider'"]; *Simmons v. West Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 701–702 [elements of medical malpractice].)  Specifically, the complaint alleges that Asistencia owed Skyler duties, that Asistencia failed to meet its duties, and that "[a]s a proximate result of negligence and 'neglect' . . . [Skyler] died."  The allegations of understaffing and the failure to prevent Skyler from falling or developing infections speak to "negligent act[s] or omission[s] to act by a health care provider in the rendering of professional services" which proximately caused Skyler's death. (§ 1295, subd. (g)(2).)

Urging us to affirm the trial court's order, plaintiffs assert that the wrongful death claim is not subject to *Ruiz* because it is one for dependent adult abuse, not professional negligence. Certainly neglect can constitute abuse under the Elder Abuse Act.  (See, e.g., Welf. & Inst. Code, § 15610.57, subds. (a)(1), (b)(2), (b)(3).)  That is why Skyler's successor in interest can absolutely pursue a cause of action under the Elder Abuse Act on Skyler's behalf.  But the law does not permit Skyler's parents to assert their own claim for neglect under the Elder Abuse Act (*Quiroz*, *supra*, 140 Cal.App.4th at pp. 1282–1283 [only the decedent or his estate can assert an elder abuse claim; the heirs

have no claim in their own right under the Elder Abuse Act], ["the enhanced remedies provided under the [Elder Abuse Act] were intended to apply to actions by or on behalf of *victims* of elder or dependent care abuse" not "to a wrongful death action brought by a decedent's heir on his or her own behalf"]), and they cannot circumvent this well-settled principle simply by labeling their claim as one for wrongful death, a cause of action "clear[ly]" subject to section 1295. (*Ruiz, supra*, 50 Cal.4th at p. 849.)  In other words, if the parents cannot maintain a claim for abuse under the Elder Abuse Act in their own name, it makes no sense for them to be able to pursue a claim for wrongful death based upon that same alleged abuse.[7]

The various Court of Appeal decisions that have confined *Ruiz*'s holding to wrongful death claims predicated on medical malpractice or professional negligence do not compel a different result because, as set forth above, the parents' wrongful death claim sounds in professional negligence.  (See *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1084  ["a patient of a skilled nursing facility can bind her heirs to arbitrate wrongful death claims arising only from medical malpractice"]; *Avila, supra*, 20 Cal.App.5th at p. 843 [where a wrongful death "claim is not one within the ambit of section 1295, . . . *Ruiz*'s

---

[7]    This conclusion begs a question not briefed by the parties: Are the arbitrator's findings on Skyler's claims binding on the parents' wrongful death claim?  (*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 407 [""The doctrine of res judicata applies not only to judicial proceedings but also to arbitration proceedings. [Citation.]" [Citation.]' [Citations.]  The doctrine of collateral estoppel also applies.  An arbitration award therefore can bar identical causes of action in court and have collateral estoppel effect"].)

11

holding does not apply"]; *Daniels*, *supra*, 212 Cal.App.4th at p. 677 ["*Ruiz* ha[s] no bearing on third party wrongful death claims outside the context of section 1295"]; *Bush v. Horizon West* (2012) 205 Cal.App.4th 924, 929 [*Ruiz* not applicable where case did not involve a wrongful death claim predicated on medical malpractice].)  To the extent these cases hold otherwise, we respectfully disagree.  (See, e.g., *Avila*, *supra*, 20 Cal.App.5th at p. 842 ["If the primary basis for the wrongful death claim sounds in professional negligence as defined by MICRA, then section 1295 applies.  If, as plaintiffs claim here, the primary basis is under the Elder Abuse and Dependent Adult Civil Protection Act . . . then section 1295 does not apply and neither does *Ruiz's* exception to the general rule that one who has not consented cannot be compelled to arbitrate"].)

But even if we agreed that a wrongful death claim based upon dependent adult abuse falls outside the scope of *Ruiz* and cannot be ordered to arbitration, that principle would not apply here.  While a cause of action for statutory dependent adult abuse is distinct from one for medical malpractice (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31), plaintiffs do not allege with adequate specificity how their claims here constitute dependent adult abuse and not professional negligence (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 791 [a cause of action under the Elder Abuse Act must be alleged with particularity]).  Absent these specific allegations, we cannot ignore our Supreme Court's mandate in *Ruiz*.  (*Loshonkohl v. Kinder* (2003) 109 Cal.App.4th 510, 517.)  We will not permit plaintiffs to circumvent *Ruiz* through intentionally opaque pleading.  (*Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1196 ["it may reasonably be inferred [that the plaintiff's amended complaints]

were artfully drafted for the purpose of avoiding arbitration"]; *Johnson v. Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675, 682 [a plaintiff may not avoid arbitration by artfully pleading his complaint].)

## DISPOSITION

The order is reversed. The trial court is directed to order the parents' wrongful death cause of action to arbitration. Asistencia is entitled to costs on appeal.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT


13

Filed 5/10/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JONIE A. HOLLAND et al., | B323237 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 22STCV01945) |
| v. | |
| SILVERSCREEN HEALTHCARE, INC., | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Appellant. | |

THE COURT:

    The opinion in the above-entitled matter filed on April 16, 2024, was not certified for publication in the Official Reports.

    For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.